**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSE LUIS BENITEZ and JUAN REYES,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | No. 08 CV 1998 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| **AMERICAN STANDARD CIRCUITS, INC., and VIJAY PATEL,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jose Luis Benitez and Juan Reyes ("Plaintiffs") bring this action against Defendants American Standard Circuits, Inc. ("ASC") and Vijay Patel, alleging Illinois common law causes of action of assault, battery, intentional infliction of emotional distress, and false imprisonment, and sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, for events stemming from Plaintiffs' employment with ASC. Two motions are now before the Court: ASC's Partial Motion to Dismiss Counts I through VII of Plaintiffs' First Amended Complaint, and Plaintiffs' Motion to Dismiss the Defamation Counterclaims of Defendant Patel.

### I.    BACKGROUND

#### a.  Factual Background

The following facts are alleged in the Complaint and will be accepted as true for purposes of this motion. Plaintiffs are former employees of ASC, an Illinois corporation. First Amended Compl. ("Compl.") ¶ 6-7. Defendant Patel was employed by ASC as a management-level employee, with the authority to hire, fire, and discipline employees. *Id.* at ¶ 13-14.

1

Plaintiff Reyes began his employment in the plating department of ASC on or around February 9, 1998. *Id.* at ¶ 20-21. At that time, Patel was working as a mechanic in ASC's maintenance department. *Id.* at ¶ 22. On Reyes' first day of employment, Patel groped Reyes, grabbed his genitals, and otherwise touched him improperly. *Id.* at ¶ 23-25. Reyes' immediate supervisor, a man known as Raju, knew of and laughed off Defendant Patel's behavior. *Id.* at ¶ 26. Patel continued to engage in similarly inappropriate behavior against Reyes several times a week, until Reyes was terminated in early 2006. *Id.* at ¶ 27. Other employees witnessed Patel fondling Reyes. Reyes saw Patel fondle at least seven other male employees, as Patel engaged in such behavior openly and notoriously. *Id.* at ¶ 28-29. In one particular incident, Reyes asked Patel for a tool. Patel instructed Reyes to follow him to the tool room to fetch it, but when they entered the room, Patel locked the door and groped Reyes and propositioned him for sex. *Id.* at 30. On at least two occasions, management level employees at ASC with the power to fire, hire, and discipline employees witnessed Patel grab Reyes, but took no action to remediate or stop Patel's conduct. *Id.* at 32-37. On January 28, 2006, Reyes and another ASC employee ("Leo") filed a police report with the Franklin Park Police Department against Patel for battery, but ASC's owners pressured Leo and Reyes to drop the criminal charges, stating that Reyes' employment at ASC would remain "normal" as long as Reyes dismissed the criminal complaint. *Id.* at ¶ 38-40. Reyes refused to dismiss the criminal charges. Later that week, he was terminated. *Id.* at ¶ 42-43. Plaintiffs allege that Reyes was terminated because he objected to Patel's conduct. Reyes alleges that he suffered severe emotional distress as a result of Defendants' actions. *Id.* at ¶ 82, 115.

Plaintiff Benitez began his employment in the screening department of ASC on or around February 17, 2003. *Id.* at ¶ 46. Around September 2005, Patel began making unwelcome

sexually explicit comments to Benitez and groping him. Benitez brought this matter to his supervisor's attention, but the supervisor merely laughed and did nothing to remediate the conduct Benitez complained of. *Id.* at ¶ 52-54. Patel continued to grab Benitez even after Benitez complained to the supervisor. On January 4, 2006, Patel asked Benitez to show him his penis and that if Benitez did not comply, he would regret it. *Id.* at ¶ 57. Benitez complied, then Patel performed oral sex on him. *Id.* Approximately two weeks later, Patel grabbed Benitez in an inappropriate manner. *Id.* at ¶ 58. Benitez complained to his supervisor the next day. *Id.* at ¶ 59. The day afterward, he was fired. *Id.* at ¶ 60. Three days later, on January 23, 2006, Benitez returned to the office and met with Jay Hirpana, one of ASC's owners. Benitez asked Hirpana if he knew that Patel was inappropriately touching Benitez, to which Hirpana replied, "I don't care . . . I have the money to fight. *Id.* at ¶ 62-63. Later that same day, Benitez filed a police report against Patel with the Franklin Park Police Department. *Id.* at ¶ 66. Benitez alleges that he suffered severe emotional distress as a result of Defendants' actions. *Id.* at ¶ 93, 121.

Plaintiffs allege that Patel's inappropriate behavior was notorious among ASC employees, who warned each other to stay away from Patel. *Id.* at ¶ 69. Plaintiffs also allege that ASC had full knowledge of Patel's conduct, and allowed, authorized, and permitted his actions and behavior to continue despite the company's written sexual harassment policy. *Id.* at ¶ 70-71.

### b. Procedural History

This lawsuit was initially filed by Plaintiffs in the Circuit Court of Cook County, Illinois, Law Division. Plaintiffs' First Amended Complaint listed thirteen Illinois common law tort causes of action. This complaint was dismissed pursuant to 735 ILCS 5/2-615 on February 13, 2008, and Plaintiffs were granted leave to file an amended complaint, which Plaintiffs did file on

March 12, 2008. The amended complaint included new causes of action arising under Title VII. On April 8, 2008, ASC filed a notice of removal in this Court.

The First Amended Complaint has seventeen causes of action which are best summarized in list form:

| | |
|---|---|
| Count I: | Assault, Reyes against ASC |
| Count II: | Assault, Benitez against ASC |
| Count III: | Battery, Reyes against ASC |
| Count IV: | Battery, Benitez against ASC |
| Count V: | Intentional Infliction of Emotional Distress, Reyes against ASC |
| Count VI: | Intentional Infliction of Emotional Distress, Benitez against ASC |
| Count VII: | Assault, Reyes against Patel |
| Count VIII: | Assault, Benitez against Patel |
| Count IX: | Battery, Reyes against Patel |
| Count X: | Battery, Benitez against Patel |
| Count XI: | Intentional Infliction of Emotional Distress, Reyes against Patel |
| Count XII: | Intentional Infliction of Emotional Distress, Benitez against Patel |
| Count XIII: | False Imprisonment, Reyes against Patel |
| Count XIV: | Sexual Harassment (Title VII), Benitez against ASC |
| Count XV: | Retaliation (Title VII), Benitez against ASC |
| Count XVI: | Sexual Harassment (Title VII), Reyes against ASC |
| Count XVII: | Retaliation (Title VII), Reyes against ASC |

In Defendants' Answer, Defendant Patel filed counterclaims for defamation against both Benitez and Reyes. Plaintiffs have filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss these counterclaims. Defendant ASC has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), moving this Court to dismiss Counts I through VII of Plaintiffs' First Amended Complaint. In the alternative, ASC moves the Court to strike all allegations in the First Amended Complaint barred by applicable statutes of limitations, and to sever the two plaintiffs' claims pursuant to Fed. R. Civ. P. 21. If the Court denies the motion to dismiss and the motion to sever, ASC requests, in another alternative, that the Court enter an Order requiring separate trials for each of the plaintiffs' claims against ASC, pursuant to Fed. R. Civ. P. 42(b).

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim upon which relief can be granted, the district court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. Fed. R. Civ. P. 12(b)(6); *Gastineau v. Fleet Mortg. Corp.,* 137 F.3d 490, 493 (7th Cir. 1998) (citation omitted). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed pursuant to Rule 12(b)(6) unless it fails it provide fair notice of what the claim is and the grounds upon which it rests or it is apparent from the face of the complaint that under no plausible facts may relief be granted. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625. Although "[a]ll the complaint need do to withstand a motion to dismiss for failure to state a claim is outline or adumbrate a violation of the statute or constitutional provision upon which the plaintiff relies and connect the violation to the named defendants," *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 459 (7th Cir. 2007) (quoting *Brownlee v. Conine,* 957 F.2d 353, 354 (7th Cir.1992) (internal citations and quotation marks omitted)), surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007); *see also Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (citing *Twombly*).

### III.  ANALYSIS

#### a.  Partial Motion to Dismiss Counts I through VI

Defendants first contend that Counts I through VI (Plaintiffs' causes of action against ASC) should be dismissed because there is no basis for *respondeat superior* liability, since Patel was acting outside the scope of his employment. This argument is misplaced. Plaintiffs do not

press a *respondeat superior* theory for ASC's liability. Instead, they contend that ASC should be held directly liable for Patel's actions because management level employees allowed, authorized, and permitted Patel's intentionally tortious behavior to continue. "[A]n employer is directly liable (that is, independently of respondeat superior) for those torts committed against one employee by another, whether or not committed in furtherance of the employer's business, that the employer could have prevented by reasonable care in hiring, supervising, or if necessary firing the tortfeasor . . . . Consistent with this principle, an employer who has reason to know that one of his employees is being harassed in the workplace by others . . . . does nothing about it, is blameworthy." *Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1422 (7th Cir. 1986) (citing *Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 818-19 (7th Cir. 1985)). *See also Quela v. Payco-General American Credits, Inc.*, 84 F.Supp.2d 956, 960 (N.D.Ill. 2000) ("Courts have recognized that management's knowledge coupled with lack of follow-up action is equivalent to express authorization of injurious conduct.") (citing *Mobley v. Kelly Kean Nissan, Inc.*, 864 F.Supp. 726, 730 (N.D.Ill. 1993) ("[A]n employer can be held directly responsible for an intentional tort committed by one co-worker against another if management level employees knew, or in the exercise of reasonable care should have known, of such harassment, but failed to take reasonable steps to prevent the harassing conduct."); *Cline v. General Elec. Capital Auto Lease, Inc.*, 757 F.Supp. 923, 931 (N.D.Ill. 1991)). Plaintiffs have alleged sufficient facts to show that Patel openly engaged in intentionally tortious conduct for years, that management level employees had knowledge of Patel's behavior, and that ASC took no action to remedy such behavior—e.g., management level employees knew of Patel's behavior and authorized it by terminating Reyes when he would not drop criminal charges against Patel. *See* Compl. at ¶ 32-

40, 52-54, 59-63. These allegations are sufficient to support Plaintiffs' claims that ASC can be held liable for Patel's conduct.

Next, Defendants argue that Counts I through VI should be dismissed because Plaintiffs fail to allege sufficient facts to properly plead valid causes of action. Under Illinois common law, a civil assault is "an intentional, unlawful offer of corporeal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the present ability to effectuate the attempt if not prevented." *Parrish v. Donahue,* 110 Ill.App.3d 1081, 66 Ill.Dec. 860, 443 N.E.2d 786, 788 (1982); *see* also *Perez v. Globe Ground North America, LLC*, 482 F.Supp.2d 1023, 1031 (N.D.Ill. 2007). A claim for assault must include an allegation of a reasonable apprehension of an imminent battery. *Perez*, 482 F.Supp.2d at 1031. In order to state a cause of action for intentional battery under Illinois law, a plaintiff must allege a willful touching of another person without the consent of the person who is touched. *Kling v. Landry*, 292 Ill. App.3d 329, 339, 686 N.E.2d 33, 41, 226 Ill.Dec. 684, 692 (Ill. App. Ct. 1997). To state a cause of action under Illinois law for intentional infliction of emotional damage, (1) the conduct involved must be truly extreme and outrageous, (2) the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress, and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 126 Ill.2d 78, 86, 533 N.E.2d 806, 809, 127 Ill.Dec. 724, 727 (1988). As summarized above in the background section, Plaintiffs have alleged sufficient facts regarding Patel's conduct so that claims against him could survive a motion to dismiss. Forced oral sex is a battery; the threat of forced oral sex is an assault; either could be considered outrageous enough to support a claim for intentional infliction of emotional distress. Also as discussed above, Illinois law provides for an employer's direct liability in some

circumstances for failing to stop known tortious conduct by its employees. This Court must accept the factual allegations as true for purposes of the motion to dismiss, and here Plaintiffs have presented sufficient facts which, if proved, could entitle them to recover against ASC for having authorized or permitted Patel's behavior.

Next, ASC argues that Counts I through VI should be dismissed because they are preempted by the Illinois Workers' Compensation Act ("ICWA"), 820 ILCS 305/1 *et seq.* The IWCA is an employee's exclusive remedy for "accidental" injuries arising out of and in the course of employment. "The meaning of 'accidental injury' as used in the Illinois Workmen's Compensation Act has been defined as an injury which is traceable to a definite time, place and cause, and occurs in the course of employment unexpectedly and without affirmative act or design of the employee." *McPherson v. City of Waukegan*, 379 F.3d 430, 442 (7th Cir. 2004) (holding that employee who brought state law intentional tort causes of action under *respondeat superior* theory against employer for intentional acts of co-worker could not overcome IWCA preemption) (quoting *Hales & Hunter Co. v. Industrial Com.,* 31 Ill.2d 139, 141, 198 N.E.2d 846 (Ill.1964)). The Illinois Supreme Court has explained that intentional torts committed by co-employees are nonetheless considered "accidental" for the purposes of the IWCA:

> Unless the employer has commanded or expressly authorized the assault, it cannot be said to be intentional from his standpoint any more than from the standpoint of any third person. Realistically, it to him is just one more industrial mishap in the factory, of the sort he has the right to consider exclusively covered by the compensation system.

*Meerbrey v. Marshall Field & Co., Inc.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1227 (1990) (quoting 2A A. Larson, Law of Workmen's Compensation § 68.21 (1988)). One way an employee can avoid preemption is by showing that his or her injuries were not "accidental." *McPherson*, 370 F.3d at 443. Thus, to show that their injuries were not accidental, Plaintiffs must establish that ASC itself "has committed, commanded, or expressly authorized" the torts

against them. *Id.* As discussed above, the facts that Plaintiffs have alleged, if accepted as true, would show that ASC authorized Patel's tortious behavior. Thus, IWCA does not preclude Plaintiffs' common law claims against ASC, and Plaintiffs' complaint satisfies notice-pleading requirements.

Finally, Defendants contend that Plaintiffs' state common law tort claims against ASC should be dismissed because the Illinois Human Rights Act ("IHRA") preempts those claims. That statute provides in relevant part that "no court shall have jurisdiction over the subject of an alleged civil rights violation[1] other than set forth in [the IHRA]." 775 ILCS 5/8-111(c). The Illinois Supreme Court has held that where tort claims are "inextricably linked" to the civil rights violation such that there is no independent basis for the common law claims other than the IHRA, the court lacks jurisdiction to adjudicate the common law claims. *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 687 N.E.2d 21, 227 Ill.Dec. 98 (1997); *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill.2d 507, 517, 639 N.E.2d 1273, 203 Ill.Dec. 454 (1994). In *Maksimovic*, the Illinois Supreme Court concluded that the plaintiff-employee's common law claims of assault, battery, and false imprisonment were *not* inextricably linked to her claims of sexual harassment, because the plaintiff-employee had established the necessary elements of each tort independent of any legal duties created by the IHRA. Like the plaintiff in *Maksimovic*, Plaintiffs here have alleged sufficient facts to establish a basis for imposing liability on Defendants independent of any civil rights violation; as discussed above, Plaintiffs have alleged all the necessary elements of the common law torts. *See also Lowing v. The Buffalo Restaurant and Ice Cream Parlor, et al.*, No. 05 C 2557 (N.D. Ill. Nov. 18, 2005) (IHRA does not preempt plaintiff's common law assault, battery, and intentional infliction of emotional distress claims

---

[1] Parties do not dispute that Plaintiffs' Title VII claims are alleged civil rights violations.

9

because they are all separate claims requiring different proof from plaintiff's Title VII sex discrimination and retaliation claims). Notice-pleading requirements are satisfied, and ASC's motion to dismiss Counts I through VI is DENIED.

### b. Motion to Strike Portions of the Complaint

Defendants also move to strike portions of Plaintiffs' First Amended Complaint as time barred, pursuant to Fed. R. Civ. P. 12(f). Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendants argue that all factual allegations about incidents of assault or battery occurring before October 9, 2005 are time barred because of the two year statute of limitations of on such claims. However, Plaintiffs do not seek to impose liability against Defendants for torts committed outside of the statute of limitations; these factual allegations are relevant to other matters, including, inter alia, whether ASC authorized Patel's conduct. Accordingly, Defendants' motion to strike is DENIED.

### c. Motion to Sever/Motion for Separate Trials

Defendants also move to sever Plaintiffs' claims pursuant to Fed. R. Civ. P. 21 or, in the alternative, to order separate trials pursuant to Fed. R. Civ. P. 42(b). Rule 21 permits a court "at any time, on just terms, [to] add or drop a party. The court may also sever any claim against a party." Under the permissive joinder standard in Fed. R. Civ. P. 20(a), plaintiffs can join in one action if the right to relief arises out of "the same transaction, occurrence, or series of transactions or occurrences . . . [and] any question of law and fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a); *Morton Grove Pharms. v. National Pediculosis Ass'n*, 525 F.Supp.2d 1049, 1050 (N.D. Ill. 2007) (granting motion to sever pursuant to Rule 21, using standard for improper joinder in Rule 20(a)). Pursuant to Rule 42(b), "for convenience, to avoid

prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or thirdparty claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." The motion to sever and the motion for separate trials are premature at this point. A more appropriate time to decide the matter would be at the conclusion of discovery. Accordingly, Defendants' motion to sever and motion for separate trials are DENIED without prejudice.

### d. Plaintiffs' Motion to Dismiss Patel's Defamation Counterclaims

In Defendants' Answer to Plaintiffs' First Amended Complaint, Defendant Patel alleged two common law counterclaims for defamation against each of the Plaintiffs. Patel alleges the police reports filed by Benitez on January 23, 2006, and Reyes on January 28, 2006 were false and defamatory. Although the statute of limitations on Illinois defamation actions is one year (and Answer was first filed on May 9, 2008), 735 ILCS 5/13-201, Patel's counterclaims are not barred by the statute of limitations because of an Illinois rule permitting a defendant in a lawsuit to bring a counterclaim after the period authorized in the applicable statute of limitations has elapsed, as long as the plaintiff's claim arose before the cause of action brought as a counterclaim was barred. 735 ILCS 5/13-207; *Bethlehem Steel Corporation v. Chicago Eastern Corporation,* 863 F.2d 508, 511 (7th Cir.1988); *Goldstein v. Kinney Shoe Corp.*, 931 F.Supp. 595, 598 (N.D. Ill. 1996).

However, the counterclaims are barred because statements made to police officers regarding a commission of a crime are protected by an absolute privilege. *Layne v. Builders Plumbing Supply Co., Inc.*, 210 Ill.App.3d 966, 969, 569 N.E.2d 1104, 1106, 155 Ill.Dec. 493, 495 (Ill. App. Ct. 1991). In *Layne*, the Appellate Court, Second District first explained privileges under Illinois law:

> Whether a defamatory statement is protected by an absolute or a qualified, or conditional, privilege is a question of law for the court. Generally, the class of occasions where a defamatory statement is absolutely privileged is narrow. The privilege embraces actions required or permitted by law in the course of judicial or quasi-judicial proceedings as well as actions "necessarily preliminary" to judicial or quasi-judicial proceedings. An absolute privilege provides complete immunity from civil action, even though the statements are made with malice, as plaintiff contends here, because public policy favors the free and unhindered flow of such information.

*Id.* (citations omitted). It then held, in light of these principles, that a defendant-employer who had reported to the police department that plaintiff-employee had threatened, harassed, and assaulted a co-worker was protected by an absolute privilege against plaintiff's defamation counterclaim. *Id.* Because the defendant's communication alleged the commission of a crime and was made to the public authority charged with investigating such crimes, the court considered it to be necessarily preliminary to judicial or quasi-judicial proceedings. *Id. See also Dean v. Kirkland*, 301 Ill.App. 495, 23 N.E.2d 180 (1939) (statement by defendant's investigator to police in the course of parties' judicial proceedings was protected against plaintiff's defamation claim by absolute privilege). This Court agrees with the reasoning of the *Layne* court. The cases offered by Defendants urging this Court not to apply the absolute privilege here can be distinguished because they involve defamatory reports of alleged police misconduct to internal disciplinary authorities or statements unrelated to the investigation of criminal conduct. *See, e.g. Zych v. Tucker*, 844 N.E.2d 1004, 300 Ill. Dec. 561 (Ill. App. Ct. 2006) (arrestee's statements to police internal affairs office containing false statements about police officer was subject only to qualified, not absolute, privilege); *Girsberger v. Kersz*, 633 N.E.2d 781, 198 Ill. Dec. 940 (Ill. App. Ct. 1994) (publication of corporate resolution defaming employee to police officer was not privileged where the police officer had not been called to the business to arrest the employee or investigate a crime). Here, Plaintiffs reports of Patel's alleged batteries to the police were clearly made to initial criminal proceedings against Patel, and they are therefore

covered by the absolute privilege. Accordingly, Plaintiffs' motion to dismiss the defamation counterclaims is GRANTED.

## IV.    CONCLUSION

Defendant ASC's Motion to Dismiss Counts I through VI and Motion to Strike are DENIED. Plaintiffs' Motion to Dismiss Defamation Counterclaims is GRANTED. Defendants' motion to sever and motion for separate trials are DENIED without prejudice.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

**Dated:** March 18, 2009